1  Kenneth M. Trujillo-Jamison (Bar No. 280212)
   ktrujillo-jamison@willenken.com
2  Eileen Ahern (Bar No. 216822)
   eahern@willenken.com
3  Kirby Hsu (Bar No. 312535)
   khsu@willenken.com
4  WILLENKEN LLP
5  707 Wilshire Blvd., Suite 3850
   Los Angeles, California 90017
6  Telephone:  (213) 955-9240
   Facsimile:  (213) 955-9250
7

8  Attorneys for Defendant
   X Corp.
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

| 13  DAVID ANGEL SIFUENTES III, | Case No.: 3:24-cv-00590-SK |
|---|---|
| 14            Plaintiff, | Hon. Sallie Kim |
| 15 v. | **DEFENDANT'S NOTICE OF MOTION TO DIMISS AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16 X CORP., | |
| 17 | |
| 18            Defendant. | |
| 19 | |
| 20 | [Request for Judicial Notice; Declaration of Kenneth M. Trujillo-Jamison; and Proposed Order filed concurrently] |
| 21 | |
| 22 | |
| 23 | Date:      November 18, 2024 |
| 24 | Time:      9:30 A.M. |
|    | Ctrm:      C |
| 25 | Action Filed:  January 29, 2024 |

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
Page

3   I.      INTRODUCTION ..................................................................................... 1

4   II.     BACKGROUND ....................................................................................... 2

5           A.      Plaintiff's Allegations ................................................................. 2

6           B.      X Corp.'s Terms of Service ........................................................ 4

            C.      Relevant Procedural History ....................................................... 5

7   III.    LEGAL STANDARD ............................................................................... 6

8   IV.     ARGUMENT ............................................................................................ 7

9           A.      Plaintiff Fails to State Any Claim .............................................. 7

10                  1.      California Law Governs ................................................... 7

11                  2.      Plaintiff's Common Law Claims Are Barred by the Terms' Disclaimer
                            and Limitation of Liability Clause .................................. 7

12                  3.      Plaintiff's California Claims Are Time-Barred ............... 9

13                  4.      Plaintiff Fails to Plausibly Allege Any Claim ................. 9

14                          a.      Plaintiff Fails to Plausibly Allege Damages for All His Claims..... 9

                            b.      Plaintiff Fails to Allege Any Plausible Negligence-Based Claim  12
15
                            c.      Plaintiff Fails to Allege a Plausible Breach of Contract Claim .... 15
16
                            d.      Plaintiff Fails to Allege a Plausible Breach of Implied Contract
17                                  Claim ................................................................... 16

18                          e.      Plaintiff Fails to Allege a Plausible Bailment Claim .................. 17

19                          f.      Plaintiff Fails to Allege a Plausible Claim for Invasion of
                                    Privacy .................................................................. 17
20
                            g.      Plaintiff Fails to Allege a Plausible IIED Claim......................... 18
21
                            h.      Plaintiff Fails to Allege a Plausible CCPA Claim ...................... 19
22
                            i.      Plaintiff Fails to Allege a Plausible CCRA Claim ...................... 19
23
                            j.      Plaintiff's Michigan Statutory Claims Fail................................. 20
24
                            k.      Plaintiff Fails to Allege a Plausible Conversion Claim............... 22

                            l.      Plaintiff Fails to Allege a Plausible Unjust Enrichment Claim .... 23
25
                            m.      Plaintiff's "Future and Ongoing Injury" Claim Should Be
                                    Dismissed................................................................ 24
26
            B.      Leave to Amend Should Be Denied ............................................ 24

27  V.      CONCLUSION......................................................................................... 25

28

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

**Cases**

*Adkins v. Facebook, Inc.*,
   2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ................................................................. 8

*Anderson v. Wells Fargo Bank, N.A.*,
   2016 WL 1446768 (N.D. Cal. Apr. 13, 2016) ............................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 678 (2009) ................................................................................................. 6, 11

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ....................................................................................... 23

*Austin v. Tesla, Inc.*,
   2022 WL 2315210 (9th Cir. 2022) ............................................................................... 24

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........................................................................ 8

*Bayer v. City & Cnty. of San Francisco*,
   2023 WL 1975245 (N.D. Cal. Feb. 13, 2023) ............................................................... 6

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ..................................................................................... 22

*Belen v. Ryan Seacrest Prods., LLC*,
   65 Cal. App. 5th 1145 (2021) ...................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 6

*Branch v. Homefed Bank*,
   6 Cal. App. 4th 793 (1992) .......................................................................................... 14

*Bruzzone v. Intel Corp.*,
   2021 WL 5303916 (E.D. Cal. Nov. 15, 2021) .............................................................. 24

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ....................................................................... 19

*Castellon v. U.S. Bancorp*,
   220 Cal. App. 4th 994 (2013) ...................................................................................... 14

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ..................................................................................... 24

*Damner v. Facebook, Inc.*,
   2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) .......................................................... 8, 15

*Darnaa, LLC v. Google Inc.*,
   236 F. Supp. 3d 1116 (N.D. Cal. 2017) ........................................................................ 8

*Darnaa, LLC v. Google LLC*,
   756 F. App'x 674 (9th Cir. 2018) .................................................................................. 8

*Davidson v. City of Westminster*,
    32 Cal. 3d 197 (1982)................................................................................................... 18

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    2016 WL 6523428 (S.D. Cal. Nov. 3, 2016)................................................................. 20

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) ................................................................................................. 16

*Gardiner v. Walmart, Inc.*,
    2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................................... 8, 13

*Gardiner v. Walmart, Inc.*,
    2021 WL 4992539 (N.D. Cal. July 28, 2021) .............................................................. 23

*Gardner v. Health Net, Inc.*,
    2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) .......................................................... 20

*Green v. Mercy Hous., Inc.*,
    2018 WL 6704185 (N.D. Cal. Dec. 20, 2018).............................................................. 16

*Green Valley Landowners Ass'n v. City of Vallejo*,
    241 Cal. App. 4th 425 (2015) ................................................................................ 15, 16

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ............................................................... 14

*Hayden v. Retail Equation, Inc.*,
    2022 WL 2254461 (C.D. Cal. May 4, 2022) ............................................................... 19

*Hendricks v. DSW Shoe Warehouse, Inc.*,
    444 F. Supp. 2d 775 (W.D. Mich. 2006)..................................................................... 22

*Hernandez v. Path, Inc.*,
    2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ............................................................. 18

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ...................................................................................................... 18

*Holly v. Alta Newport Hosp., Inc.*,
    2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ............................................................. 12

*Hutchins v. Nationstar Mortg. LLC*,
    2017 WL 2021363 (N.D. Cal. May 12, 2017).............................................................. 13

*I.C. v. Zynga*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................ 11, 12

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ..................................................................................... 10

*In re Google, Inc. Privacy Pol'y Litig.*,
    2015 WL 4317479 (N.D. Cal. July 15, 2015) ............................................................. 10

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
    2021 WL 4306018 (N.D. Cal. Sept. 22, 2021)............................................................ 21

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................... 23

*In re LinkedIn User Priv. Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ........................................................ 11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)..................................................... 11, 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)..................................................... 14, 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................................ 20

*Kaiser Found. Health Plan*,
   32 F. Supp. 3d 1074 (N.D. Cal. 2014) ........................................................ 10

*Kerrigan v. ViSalus, Inc.*,
   112 F. Supp. 3d 580 (E.D. Mich. 2015)..................................................... 21

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) ........................................................ 18

*KST Data, Inc. v. DXC Tech.*,
   2018 WL 5733515 (C.D. Cal. Apr. 30, 2018)............................................... 8

*Legalforce RAPC Worldwide v. Upcounsel*,
   2019 WL 160335 (N.D. Cal. Jan. 10, 2019)......................................... 10, 21

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015) ........................................................................ 8

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................... 18

*Lucas v. Awaad*,
   299 Mich. App. 345 (2013)........................................................................ 22

*Markborough Cal. Inc. v. Super. Ct.*,
   227 Cal. App. 3d 705 (1991) ........................................................................ 8

*Marques v. Villa Holdings, Inc.*,
   2008 WL 11343008 (C.D. Cal. June 9, 2008)............................................. 9

*Mayhall v. A.H. Pond Co.*,
   129 Mich. App. 178 (1983) ........................................................................ 21

*Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*,
   2022 WL 1283153 (N.D. Cal. Feb. 11, 2022)............................................. 14

*McGarry v. Delta Air Lines, Inc.*,
   2019 WL 2558199 (C.D. Cal. June 18, 2019) ....................................... 17, 23

*Miron v. Herbalife Int'l, Inc.*,
   11 F. App'x 927 (9th Cir. 2001)................................................................. 15

*Mishiyev v. Alphabet, Inc.*,
   444 F. Supp. 3d 1154 (N.D. Cal. 2020) ...................................................... 6

*Moore v. Centrelake Med. Grp., Inc.*,
   83 Cal. App. 5th 515 (2022)....................................................................... 13

MOTION TO DISMISS

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021)...........................................................................................8

*Nedlloyd Lines B.V. v. Super. Ct.*,
  3 Cal. 4th 459 (1992)....................................................................................................7

*O'Donnell v. Vencor, Inc.*,
  466 F.3d 1104 (9th Cir. 2006) .....................................................................................9

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
  12 Cal. App. 5th 200 (2017) ......................................................................................16

*Patterson v. Med. Rev. Inst. of Am., LLC*,
  2022 WL 3702102 (N.D. Cal. Aug. 26, 2022) ...........................................................11

*Pruchnicki v. Envision Healthcare Corp.*,
  439 F. Supp. 3d 1226 (D. Nev. 2020).......................................................................10

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) .......................................................................10, 11

*Quezada v. Hart*,
  67 Cal. App. 3d 754 (1977) ........................................................................................14

*Quiroz v. Seventh Ave. Ctr.*,
  140 Cal. App. 4th 1256 (2006) ..................................................................................13

*Roehl v. Higbie Maxon, Inc.*,
  2002 WL 234875 (Mich. Ct. App. Feb. 15, 2002) ......................................................22

*Rose v. Cnty. of San Benito*,
  77 Cal. App. 5th 688 (2022).......................................................................................17

*Russell v. Walmart, Inc.*,
  2023 WL 4341460 (N.D. Cal. July 5, 2023) ..............................................................23

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014).....................................................................................23

*Sandy v. Bank of Am. Corp.*,
  678 F. App'x 579 (9th Cir. 2017) ..............................................................................24

*Shahinian v. Kimberly-Clark Corp.*,
  2015 WL 4264638 (C.D. Cal. July 10, 2015) ............................................................13

*Sifuentes v. Twitter Inc.*,
  2023 WL 7295186 (W.D. Mich. Nov. 6, 2023) ..........................................................25

*Sifuentes v. Twitter Inc.*,
  2023 WL 9015130 (W.D. Mich. Nov. 30, 2023) ........................................................25

*Sifuentes v. Twitter, Inc.*,
  2023 WL 2632781 (W.D. Mich. Mar. 24, 2023).........................................................25

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
  40 F. Supp. 3d 1191 (N.D. Cal. 2014) ......................................................................21

*Sion v. SunRun, Inc.*,
  2017 WL 952953 (N.D. Cal. Mar. 13, 2017) .............................................................12

**MOTION TO DISMISS**

*Snyder v. Allison,*
    857 F. App'x 329 (9th Cir. 2021) .......................................................................... 24

*Standard Furniture Mfg. Co. v. LF Prod. PTE. Ltd.,*
    2017 WL 7163925 (C.D. Cal. Aug. 30, 2017) ..................................................... 23

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.,*
    83 F. Supp. 3d 855 (N.D. Cal. 2015) .................................................................. 16

*Taus v. Loftus,*
    40 Cal. 4th 683 (2007) ......................................................................................... 17

*Thomas v. Gilliland,*
    95 Cal. App. 4th 427 (2002) .................................................................................. 9

*Trump v. Twitter Inc.,*
    602 F. Supp. 3d 1213 (N.D. Cal. 2022) ......................................................... 7, 20

*Varnado v. Midland Funding LLC,*
    43 F. Supp. 3d 985 (N.D. Cal. 2014) .................................................................. 14

*Worldwide Media, Inc. v. Twitter, Inc.,*
    2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) ..................................................... 17

*Young v. Facebook, Inc.,*
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ....................................................... 8

**Statutes**

California Civil Code § 1621 ..................................................................................... 16

California Civil Code § 1798.100 ................................................................................. 4

California Civil Code § 1798.140 ............................................................................... 19

California Civil Code § 1798.150 ............................................................................... 19

California Civil Code § 1798.82 ...................................................................... 4, 19, 20

California Code of Civil Procedure § 335.1 ................................................................. 9

California Code of Civil Procedure § 337 .................................................................... 9

California Code of Civil Procedure § 338 .................................................................... 9

California Code of Civil Procedure § 339 .................................................................... 9

Michigan Comp. Laws § 445.63 ................................................................................ 21

Michigan Comp. Laws § 445.72 ........................................................................... 4, 21

Case No.: 3:24-cv-00590-SK

MOTION TO DISMISS

**Rules**

Federal Rule of Civil Procedure 8 ................................................................. 1

Federal Rule of Civil Procedure 9 ............................................................... 21

Federal Rule of Civil Procedure 12 ................................................. 1, 6, 10

Federal Rule of Civil Procedure 15 ............................................................ 24

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on November 18, 2024, at 9:30 a.m., this Motion to Dismiss Plaintiff's Second Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) ("Motion"), brought by defendant X Corp. will be heard.[1] This Motion is based on this Notice of Motion and the Memorandum of Points and Authorities provided below, as well as Defendant's Request for Judicial Notice in Support of Its Motion to Dismiss the Amended Complaint ("RJN") and the Declaration of Kenneth M. Trujillo-Jamison in support of the RJN, filed concurrently.

## STATEMENT OF REQUESTED RELIEF

X Corp. requests that this Court dismiss Plaintiff's second amended complaint (Dkt. 32; "SAC") without leave to amend.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Rules 8(a) and 12(b)(6) mandate dismissal of Plaintiff's SAC. Plaintiff alleges that X Corp. suffered data breaches in 2016, 2021, and 2023 in which his publicly available email address, his Twitter[2] username and password, and his "domain" were exposed, and that X Corp. failed to secure his data or notify him of the breaches. Based on these allegations, Plaintiff asserts a host of contract-based, tort, and statutory claims.

Plaintiff fails to state any of these claims, for at least four independent reasons.

*First*, X Corp.'s Terms of Service ("Terms"), to which Plaintiff agreed, bar Plaintiff's common law claims. There, X Corp. disclaimed the obligation or ability to secure his personal data from unauthorized access by bad actors, and it disclaimed any liability for failing to do so.

*Second*, Plaintiff does not adequately allege any damages arising from the theft of any personal information. He does not plausibly allege any harm resulted from the exposure of his

---

[1] The parties have stipulated that Plaintiff shall his opposition to this Motion by September 26, 2024, and X Corp. shall file its reply in support of this Motion by October 24, 2024. ECF No. 33. The Court "generally approves" of this briefing schedule. ECF No. 35.

[2] Twitter, the online social media platform, has been re-branded as "X." This Motion continues to refer to "Twitter" throughout for ease of understanding.

1  information, some of which is publicly available. Nor can Plaintiff's speculative fear of cyber-

2  criminals using his information be a basis for damages.

3       *Third*, Plaintiff's claims, to the extent they are premised on the purported 2016 and 2021

4  breaches, are barred by the applicable statutes of limitations.

5       *Fourth*, Plaintiff fails to sufficiently plead the elements of any of his numerous claims.

6       Plaintiff should be denied yet another opportunity to amend his complaint. As noted, his

7  claims suffer from a host of legal infirmities, many of which have been raised before and have

8  not been cured. And this is Plaintiff's *fifth* attempt to state claims against X Corp. based on the

9  data breaches he alleges here. In a substantially similar lawsuit he filed against X Corp. in this

10  Court, he filed two complaints, and voluntarily dismissed his claims only after the parties had

11  fully briefed, and this Court heard oral argument on, X Corp.'s motion to dismiss his amended

12  complaint. He then filed his original complaint in this case, which the Court *sua sponte*

13  dismissed on a screening order; filed an amended complaint, which X Corp. moved to dismiss;

14  and rather than defend that complaint, he amended *again*. Each time, Plaintiff did not

15  substantially change or augment his allegations; rather, he has repeatedly changed his claims,

16  apparently hoping one of them will somehow meet his pleading obligations.

17       Plaintiff already tried this strategy in the Western District of Michigan, where, as here, he

18  filed two successive lawsuits against X Corp., which were dismissed with prejudice—and where

19  that court *sua sponte* deemed it necessary to impose filing limitations against him. This Court

20  should end Plaintiff's same litigation tactics in this Court, and X Corp. respectfully requests that

21  this Court dismiss the SAC without leave to amend.

22  **II.    BACKGROUND**

23       **A.    Plaintiff's Allegations**

24       Plaintiff alleges he is a "resident of Grand Rapids, Michigan," who has "been a user of

25  Twitter . . . since 2011." SAC ¶ 2. He alleges he created his Twitter account "using his email

26  address davidsifuentes61@yahoo.com and a password that he also used for his banking and other

27  accounts." *Id.* ¶ 2. He alleges he and X Corp. "entered into a contractual relationship when

28  Plaintiff created and used [his] Twitter account and agreed to [X Corp.'s] terms of service and

1   privacy policy." *Id.* ¶ 21.

2       Plaintiff alleges that X Corp. suffered data breaches in 2016, January 2021, and January

3   2023. *Id.* ¶¶ 4, 6, Exs. A & B. Plaintiff alleges he discovered the 2016 breach in November 2020.

4   *Id.* ¶ 6. For this breach, Plaintiff relies on "a report from Credit Karma" he did not attach to the

5   SAC (*id.* ¶ 6) but is attached to his initial Complaint ("2016 Report") (Dkt. 1 at 5 & Ex. B; Req.

6   Jud. Notice ("RJN"), Ex. A). According to that report, the purported breach of "login info

7   (usernames and password) for more than 32 million Twitter users" was *not* a breach of X Corp.'s

8   database, but "rather, the breached info was gathered from individual infected machines." RJN,

9   Ex. A. As to Plaintiff specifically, the 2016 Report states:

> [I]t's likely that **Twitter wasn't hacked, you were**. This could mean that the
> computer or phone you used to log into Twitter might have had a virus that picked
> up your password. . . . Hackers might use the password from this breach to try to
> gain access to other accounts . . . . [M]ak[e] sure you have different passwords for
> any accounts with sensitive info—like your banking app, health insurance site, tax
> software, email account, etc.

14  *Id.* (emphasis added).

15      In alleging X Corp. suffered a data breach in 2021, Plaintiff relies on Exhibit A to the

16  SAC, which alleges a January 2021 breach "exposed" Plaintiff's email address,

17  davidsifuentes61@yahoo.com, and his "full name[]." SAC ¶ 6 & Ex. A. As for the 2023 breach,

18  Plaintiff relies on Exhibit B to the SAC, which alleges a January 2023 breach involved Plaintiff's

19  "Username, Domain, User ID (UID), Email Address, [and] Password." *Id.* ¶ 6 & Ex. B. Plaintiff

20  alleges that he "never received any notification of communication" from X Corp. about the

21  breaches. *Id.* ¶ 6.

22      Plaintiff alleges his Twitter account "is currently being used by" a "hacker." *Id.* ¶ 12. He

23  also alleges his "email address and password were used by hackers and cybercriminals to access

24  his other online accounts," such as "Spotify, Netflix, PayPal, and Bank of America." *Id.* ¶ 5. He

25  further alleges his "Facebook account was also compromised, exposing his social security

26  number, banking information, and other personal facts." *Id.* Plaintiff, however, does not allege

27  facts linking this alleged access to his other accounts to the purported Twitter breaches. Plaintiff

28  alleges he suffers emotional distress and anxiety, has "wasted time . . . to protect his identity,"

1   and purchased the "AVG antivirus" service to "monitor[] data breaches." *Id.* ¶¶ 12, 120.

2        The SAC asserts 15 claims: (1) negligence; (2) breach of contract; (3) breach of implied

3   contract; (4) breach of bailment; (5) invasion of privacy by public disclosure of private facts;

4   (6) negligent infliction of emotional distress; (7) intentional infliction of emotional distress

5   ("IIED"); (8) violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code

6   § 1798.100 et seq.; (9) violation of the California Consumer Records Act ("CCRA"), Cal. Civ.

7   Code § 1798.82; (10) violation of the Michigan Identity Theft Protection Act ("MITPA"), Mich.

8   Comp. Laws § 445.72; (11) violation of the Michigan Consumer Protection Act ("MCPA"),

9   Mich. Comp. Laws § 445.72; (12) conversion; (13) unjust enrichment; (14) negligence per se;

10  and (15) "FUTURE AND ONGOING INJURY."[3] *Id.* ¶¶ 15-121. Plaintiff seeks $375,000 in

11  emotional distress damages or "in the alternative an award of $150,000," $5 million in punitive

12  damages, and injunctive relief. *Id.* at 21-22 (prayer for relief).

13       **B.    X Corp.'s Terms of Service**

14       Plaintiff alleges when he "created and used [his] Twitter account" in 2011, he agreed to X

15  Corp.'s "terms of service and privacy policy," which "constitute[] a valid and enforceable

16  contract" between the parties. *Id.* ¶¶ 2, 21-22. When he created his account, Plaintiff necessarily

17  agreed to the Terms. *See* RJN, Ex. B at 1; *id.*, Ex. C at 1. The versions of the Terms in 2011,

18  when he created his account, provided that, in using X Corp.'s services, Plaintiff "consent[ed]"

19  to X Corp.'s "collection and use (as set forth in [X Corp.'s] Privacy Policy)" of his personal

20  information. *Id.*, Ex. D at 1; *id.*, Ex. E at 1. The Terms also provided that "[a]ny information that

21  [Plaintiff] provide[s] to [X Corp.] is subject to [the] Privacy Policy, which governs [X Corp.'s]

22  collection and use of [his] information." *Id.*, Ex. D at 1; *id.*, Ex. E at 1. The versions of the

23  Privacy Policy in place in 2011 set forth X Corp.'s "policies and procedures on the collection,

24  use and disclosure of [Plaintiff's] information." *Id.*, Ex. F at 1; *id.*, Ex. G at 1. Nothing in the

25  Privacy Policy suggests X Corp. is obligated to—or can—keep personal information safe from

26  cyberattacks, nor obligates X Corp. to provide notice of any security breach. *See id.*, Ex. F at 1;

27

28

---

[3] Claims 8 through 15 are misnumbered in the SAC.

1   *id.*, Ex. G at 1. The Terms also provided:

2
> Your access to and use of the Services or any Content is at your own risk. You
3   > understand and agree that the Services is provided to you on an "AS IS" and "AS
> AVAILABLE" basis. . . . We make no warranty and disclaim all responsibility and
4   > liability for the . . . security or reliability of the Services . . . . [We] will not be
> responsible or liable for any . . . loss of data, or other harm that results from your
5   > access to or use of the Services . . . . We make no warranty that the Services will
> . . . be available on . . . [a] secure . . . basis.

6   *Id.*, Ex. D at 2; *id.*, Ex. E at 2. The Terms also included a limitation of liability clause that states,

7   in relevant part:

8
> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, [X
9   > Corp.] WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL,
> SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING
10  > WITHOUT LIMITATION, LOSS OF . . . DATA, USE, . . . OR OTHER
> INTANGIBLE LOSSES, RESULTING FROM . . . (i) YOUR ACCESS TO OR
11  > USE OF . . . THE SERVICES; (ii) ANY CONDUCT . . . OF ANY THIRD PARTY
> ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY . . .
12  > OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD
> PARTIES; . . . AND (iv) UNAUTHORIZED ACCESS, . . . OF YOUR
13  > TRANSMISSIONS OR CONTENT, WHETHER BASED ON WARRANTY,
> CONTRACT, TORT (INCLUDING NEGLIGENCE) OR ANY OTHER LEGAL
14  > THEORY . . . .

15  *Id.*, Ex. D at 2; *id.*, Ex. E at 2.

16      The Terms provide that "[t]hese Terms and any action related thereto will be governed by

17  the laws of the State of California without regard to or application of its conflict of law

18  provisions or your state or country of residence." *Id.*, Ex. D at 3; *id.*, Ex. E at 3.

19      **C.    Relevant Procedural History**

20      On April 12, 2023, Plaintiff filed a lawsuit against X Corp. in this Court styled as *David*

21  *Angel Sifuentes III v. Twitter Inc*, No. 23-CV-1758 ("2023 Lawsuit"). *Id.*, Ex. H at 1-2; *id.*, Ex. I

22  at 1. There, as here, Plaintiff alleged that his email address and Twitter password were stolen in a

23  January 1, 2021 data breach, and that he suffered emotional distress from worrying cyber

24  criminals could access his other accounts. *Id.*, Ex. I at 5-6, 15. Aside from his claims for breach

25  of written contract and violation of the CCPA, all the claims he asserts here were also asserted in

26  the 2023 Lawsuit. *See id.* at 10-15. On July 27, 2023, X Corp. moved to dismiss Plaintiff's

27  amended complaint in the 2023 Lawsuit, and on October 30, 2023, this Court heard oral

28

1    argument on X Corp.'s motion. *Id.*, Ex. H at 3, 7. Two weeks later, before the Court issued a

2    ruling on the motion, Plaintiff voluntarily dismissed the 2023 Lawsuit. *Id.*, Ex. H at 7.

3        On January 29, 2024, Plaintiff filed his original complaint in this case, alleging similar

4    claims to the 2023 Lawsuit. Dkt. 1. Just four days later, this Court dismissed that complaint,

5    explaining:

6

7        Plaintiff's own exhibit [*i.e.*, the 2016 Report] belies Plaintiff's assertion that a data
       breach even occurred at X Corp. It also states that it is likely that Plaintiff's own

8        individual phone or computer was hacked not as the result from any action of
       Defendant. Because these factual allegations are central to all of Plaintiff's claims,

9        it appears that Plaintiff's complaint fails to state a claim.

10    Dkt. 4 at 3. The Court granted Plaintiff leave to amend, but "cautioned" him "he may not

11    fabricate allegations or simply omit [the 2016 Report] in order t[o] cure the deficiencies." *Id.* at

12    3. On March 13, 2024, Plaintiff filed his Amended Complaint ("FAC"), which attached the 2016

13    Report. Dkt. 7, Ex. B. On May 14, 2024, X Corp. moved to dismiss the FAC. Dkt. 18. Rather

14    than oppose X Corp.'s motion, Plaintiff moved for leave to amend yet again, even though he did

15    not file his amended complaint within 21 days of service of X Corp.'s motion to dismiss. Dkts.

16    25, 27. The Court nonetheless granted Plaintiff's motion, and on July 18, 2024, Plaintiff filed the

17    SAC.

18    **III.**    **LEGAL STANDARD**

19        "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

20    factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Mishiyev*

21    *v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (quoting *Ashcroft v. Iqbal*, 556

22    U.S. 678, 678 (2009)). "[P]lausibility" requires the plaintiff to plead "factual content that allows

23    the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678;

24    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a

25    cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

26    678. Although pro se complaints are to be liberally construed, pro se plaintiffs are nonetheless

27    "required to meet these pleading standards, just like every other plaintiff." *Bayer v. City & Cnty.*

28    *of San Francisco*, 2023 WL 1975245, at *1 (N.D. Cal. Feb. 13, 2023).

IV.   **ARGUMENT**

    **A.**    **Plaintiff Fails to State Any Claim**

        *1.*    *California Law Governs*

California law governs Plaintiff's claims, because the Terms, which Plaintiff concedes is "a valid and enforceable contract" between the parties (SAC ¶ 22), provide that "[t]hese Terms and any action related thereto will be governed by the laws of the State of California." RJN, Ex. D at 3; *id.*, Ex. E at 3. Under this valid choice-of-law clause, California law governs covers all of Plaintiff's claims. *See Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1226 (N.D. Cal. 2022) (enforcing choice-of-law clause); *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 470 (1992) ("[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.").

        *2.*    *Plaintiff's Common Law Claims Are Barred by the Terms' Disclaimer*
                  *and Limitation of Liability Clause*

Plaintiff's common law claims (aside from IIED), which are based on his allegation that X Corp. failed to protect his data (*e.g.*, SAC ¶¶ 17, 25, 32, 43, 49, and 113), are barred by the Terms, in which X Corp. disclaimed any obligation to ensure Plaintiff's information was secure from the bad acts of third parties, and any liability for any such acts. RJN, Ex. D at 2; *id.*, Ex. E at 2. The Terms provide that Plaintiff uses Twitter "at [his] own risk," and that X Corp. "disclaim[s] all responsibility and liability for the . . . the security . . . of the Services," "any loss of data," and "whether the Services will . . . be available on [a] . . . secure . . . basis." RJN, Ex. D at 2; *id.*, Ex. E at 2. Additionally, the Terms provide that X Corp. "WILL NOT BE LIABLE FOR ANY . . . DAMAGES . . . OR ANY LOSS OF . . . DATA . . . OR OTHER INTANGIBLE LOSSES, RESULTING FROM . . . ANY CONDUCT . . . OF ANY THIRD PARTY . . . , INCLUDING WITHOUT LIMITATION, ANY . . . ILLEGAL CONDUCT OF . . . THIRD PARTIES." *Id.* This limitation on liability expressly applies to "ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, TORT

1    (INCLUDING NEGLIGENCE) OR OTHERWISE." *Id.*, Ex. D at 3; *id.*, Ex. E at 2.

2         "Limitation of liability clauses 'have long been recognized as valid in California' and

3    may be used at a dismissal stage to reject a party's claims." *KST Data, Inc. v. DXC Tech.*, 2018

4    WL 5733515, at *3 (C.D. Cal. Apr. 30, 2018) (quoting *Lewis v. YouTube, LLC*, 244 Cal. App.

5    4th 118, 125 (2015)) (dismissing claim based on limitation of liability clause). "Such provisions

6    'are particularly important where,' as here," a platform offers its service "without seeking

7    compensation from the people entering the terms of service." *Darnaa, LLC v. Google Inc.*, 236

8    F. Supp. 3d 1116, 1123 & n.3 (N.D. Cal. 2017), *aff'd sub nom. Darnaa, LLC v. Google LLC*, 756

9    F. App'x 674 (9th Cir. 2018) (quoting *Markborough Cal. Inc. v. Super. Ct.*, 227 Cal. App. 3d

10   705, 714 (1991)) (enforcing YouTube's limitation of liability clause in its terms of service and

11   dismissing complaint); *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 36 (2021) (Twitter

12   Inc., like other "service providers that offer free services to Internet users may have a legitimate

13   commercial need to limit their liability") (enforcing limitation of liability clause in terms of

14   service). Accordingly, courts routinely enforce disclaimers and limitation of liability clauses in

15   suits arising out of data breaches. *See*, *e.g.*, *Gardiner v. Walmart, Inc.*, 2021 WL 2520103, at *9

16   (N.D. Cal. Mar. 5, 2021) ("*Gardiner I*") (enforcing "disclaimer of warranties" regarding security

17   and "limitation of liability provision" applicable to theft of data); *Bass v. Facebook, Inc.*, 394 F.

18   Supp. 3d 1024, 1037 (N.D. Cal. 2019) (enforcing "limitation-of-liability clause," including

19   disclaimer of "guarantees" of security and disclaimer of damages liability); *Adkins v. Facebook,*

20   *Inc.*, 2019 WL 3767455, at *2-3 (N.D. Cal. Aug. 9, 2019) (same).

21        Plaintiff's common law claims fall squarely within, and are therefore barred by, the

22   Terms' disclaimer and limitation of liability clause. *See Damner v. Facebook, Inc.*, 2020 WL

23   7862706, at *6-8 (N.D. Cal. Dec. 31, 2020) (dismissing tort and contract claims in suit involving

24   hacked account because limitation of liability clause disclaimed protecting users and

25   responsibility for third party actions); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3-5 (N.D.

26   Cal. Oct. 25, 2010) (dismissing contract and tort claims based on conduct of other Facebook

27   users because of limitation of liability clause). Thus, Plaintiff's common law claims should be

28   dismissed without leave to amend.

3.      *Plaintiff's California Claims Are Time-Barred*

Plaintiff's claims under California law that are based on the purported 2016 breach, and those claims based on the purported 2021 breach (with the exception of the breach of written contract claim), are barred by the applicable statutes of limitations. The statute of limitations for Plaintiff's claims are: (1) two years for negligence (Cal. Code. Civ. Proc. § 335.1); (2) four years for breach of written contract (*id.* § 337); (3) three years for breach of implied contract (*id.* § 339); (4) three years for bailment, conversion, and unjust enrichment (*id.* § 338(c)); (5) two years for invasion of privacy and IIED (*id.* § 335.1); (6) three years for violations of the CCPA and CCRA (*id.* § 338(a)); and (7) three years for unjust enrichment (*id.* § 338(d)).

Plaintiff alleges the first breach occurred in 2016 (SAC ¶ 4) and previously alleged the second breach occurred on January 1, 2021 (Dkt. 7 ¶ 6, Ex. A). He filed this action on January 29, 2024 (Dkt. 1), *i.e.*, more than four years after the 2016 breach and more than three years after the 2021 breach. None of Plaintiff's claims relate back to the 2023 Lawsuit because he voluntarily dismissed that lawsuit. *See O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) ("[D]ismissal of the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action."); *Thomas v. Gilliland*, 95 Cal. App. 4th 427, 429 (2002) (finding it "preposterous" to argue that "the statute of limitations is tolled when a complaint is filed so that a plaintiff may dismiss the complaint and refile the same action long after the statute of limitations has expired"); *Marques v. Villa Holdings, Inc.*, 2008 WL 11343008, at *1 (C.D. Cal. June 9, 2008) ("California and federal case law do not allow 'relation back' to the filing date of a case that has been dismissed"). Thus, all the claims listed above, to the extent they are based on the alleged 2016 breach, are time-barred. And all the claims, other than breach of written contract, to the extent they are based on the alleged 2021 breach, are also time-barred.

4.      *Plaintiff Fails to Plausibly Allege Any Claim*

a.      Plaintiff Fails to Plausibly Allege Damages for All His Claims

Plaintiff's claims should be dismissed because he does not plausibly allege he suffered

1  any harm from the alleged breaches, for several reasons.

2  *First*, Plaintiff does not plausibly allege any of his personally identifiable information

3  was disclosed in any of the alleged breaches, nor that he suffered any harm arising from that

4  purported disclosure. None of the data breach reports on which Plaintiff relies allege his social

5  security number, IP address, location, domain, banking information, or non-Twitter accounts

6  were accessed by hackers, and this Court should disregard Plaintiff's conclusory allegations to

7  the contrary. *See Legalforce RAPC Worldwide v. Upcounsel*, 2019 WL 160335, at *5 (N.D. Cal.

8  Jan. 10, 2019) ("[T]he Court does not accept as true plaintiffs' allegations . . . as they are

9  contradicted by the documents attached to, and incorporated by reference in, the FAC"); *Groves*

10  *v. Kaiser Found. Health Plan*, 32 F. Supp. 3d 1074, 1079 n.4 (N.D. Cal. 2014) (while "a court

11  generally is obligated to regard the well-pleaded facts of a complaint as true when deciding a

12  Rule 12(b)(6) motion, that principle gives way when the allegations contradict documents

13  attached to the complaint").

14  Even if the Court credits Plaintiff's unsupported allegations (it should not), Plaintiff fails

15  to allege harm arising from that theft. "[T]he 'mere misappropriation of personal information'

16  does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F.

17  App'x 613, 615 (9th Cir. 2021) (citing *In re Google, Inc. Privacy Pol'y Litig.*, 2015 WL

18  4317479, at *5 n.63 (N.D. Cal. July 15, 2015)) (affirming dismissal of negligence and breach of

19  implied contract claims, where plaintiff failed to adequately allege damages arising from a data

20  breach).[4] While Plaintiff alleges his Twitter account was used by a hacker (SAC ¶ 12), he does

21  not plausibly allege the hacker's access resulted from the purported 2021 or 2023 breaches, as

22  opposed to the 2016 breach of *his computer*, not X Corp., as shown by the 2016 Report. *See*

23  RJN, Ex. A; *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)

24  ("When faced with two possible explanations, only one of which can be true and only one of

25

26  _____

27  [4] Although the claims at issue in *Pruchnicki* were alleged to arise under Nevada law, the Ninth
   Circuit relied on cases decided under California law for much of its reasoning, as did the lower
28  court in dismissing the case because "none of plaintiff's purported damages are sufficient to
   plausibly allege a claim upon which relief can be granted." *Pruchnicki v. Envision Healthcare
   Corp.*, 439 F. Supp. 3d 1226, 1236 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021).

1   which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their

2   favored explanation but are also consistent with the alternative explanation." (quoting *Iqbal*, 556

3   U.S. at 678)). Plaintiff's allegations of having emotional distress and anxiety, spending time to

4   protect his identity, and purchasing a service to monitor future data breaches (SAC ¶¶ 12, 120)

5   do not plausibly allege harm, because he does not plausibly allege he suffered any identity theft.

6   *See Patterson v. Med. Rev. Inst. of Am., LLC*, 2022 WL 3702102, at *2 (N.D. Cal. Aug. 26,

7   2022) (lost time, anxiety, and credit monitoring activity, "absent a credible risk," are not

8   cognizable injuries (collecting cases)).

9       *Second*, Plaintiff fails to plausibly allege damages based on a "risk of future injury."

10   Plaintiff alleges he has an "increased risk of identity theft and fraud," apparently regarding his

11   "financial accounts," because of "the nature of the data breach and the persistent risk of identity

12   theft and fraud." SAC ¶¶ 120-21. But he does not allege how any of those actions could occur

13   from using any of the information he alleges was breached from his Twitter account. *See I.C. v.

14   Zynga*, 600 F. Supp. 3d 1034, 1052-53 (N.D. Cal. 2022) (the "risk of harm . . . is too

15   conjectural," where court was dubious that "criminals would be able to use e-mail addresses,

16   Zynga usernames and Zynga passwords, Facebook username, phone numbers, and dates of birth,

17   even collectively, to commit identity theft") (dismissing negligence and contract claims based on

18   data breach); *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1094 (N.D. Cal. 2013)

19   (breach of password and email address did not demonstrate risk of future identity theft). The

20   SAC also does not plausibly allege Plaintiff suffered any identity theft or fraud, and common

21   sense compels the conclusion that "financial accounts" and other sensitive accounts cannot be

22   opened with a publicly available email, Twitter password, "ip address," or "location." SAC ¶ 2.

23   Plaintiff's threadbare predictions of a "risk of future identity theft or fraud" are implausible, and

24   to the extent his claims are premised on any risk of future harm, they should be dismissed. *See

25   Pruchnicki*, 845 F. App'x at 614 (affirming dismissal of negligence and contract claims for

26   failure to plausibly allege damages, where plaintiff alleged "imminent and certainly impending

27   injury flowing from potential fraud and identity theft"); *In re Sony Gaming Networks &

28   Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 950, 963 (S.D. Cal. 2012) ("*Sony I*")

1  (where plaintiffs alleged "names, mailing addresses, email addresses, birth dates, credit and debit

2  card information (card numbers, expiration dates and security codes) and login credentials" were

3  stolen by hackers, negligence claim dismissed for failure to allege damages because "without

4  specific factual statements that Plaintiffs' Personal Information has been misused, in the form of

5  an open bank account, or unreimbursed charges, the mere danger of future harm, unaccompanied

6  by present damage, will not support a negligence action" (cleaned up)).

7       *Third*, Plaintiff fails to plausibly allege he suffered $375,000 in "emotional distress"

8  damages because of the alleged breaches. SAC ¶ 12. "Although actual damages can include

9  emotional distress, a plaintiff must support [a] claim for pain and suffering with something more

10  than [plaintiff's] own conclusory allegations, such as specific claims of genuine injury." *Sion v.*

11  *SunRun, Inc.*, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) (cleaned up) (plaintiff failed to

12  plausibly allege emotional distress damages premised on unauthorized disclosure of

13  information). Plaintiff's allegations are insufficient to plausibly allege any emotional distress;

14  indeed, the alleged risk of future injury underlying his purported distress is too conjectural to be

15  a basis for damages. *See Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *3 (C.D. Cal.

16  Oct. 21, 2020) (plaintiff's allegations were insufficient to state a claim for emotional distress

17  damages, where she alleged she "'experienced fear of identity theft . . . generalized anxiety . . .

18  emotional pain and upset'" and "'sustain[ed] injury to her nervous system and person, all of

19  which injuries have caused and continue to cause [Plaintiff] great mental, physical, emotional

20  and nervous pain and suffering.'"); *Zynga*, 600 F. Supp. 3d at 1053-54 ("Because plaintiffs do

21  not show a substantial or imminent risk of identity theft, they cannot rely on" any purported

22  "resulting . . . emotional distress" as an injury).

23       In sum, Plaintiff's claims should be dismissed for failure to plausibly allege damages.

24            b.    <u>Plaintiff Fails to Allege Any Plausible Negligence-Based Claim</u>

25       In addition to the reasons set forth in Sections IV.A.2, IV.A.3 and IV.A.4.a, Plaintiff's

26  "negligence per se," and "negligent infliction of emotional distress," and negligence claims

27  should be dismissed because the first two claims are not cognizable causes of action, because the

28  economic loss rule bars the negligence claim, and because Plaintiff does not plausibly allege the

1    elements of negligence.

2         Neither "negligent infliction of emotional distress" nor "negligence per se" is an

3    independent tort under California law. *See Hutchins v. Nationstar Mortg. LLC*, 2017 WL

4    2021363, at *3 (N.D. Cal. May 12, 2017) ("Negligence per se is . . . an evidentiary presumption

5    . . . 'not an independent cause of action . . . .'" (quoting *Quiroz v. Seventh Ave. Ctr.*, 140 Cal.

6    App. 4th 1256, 1285 (2006))); *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1165-

7    66 (2021) ("[T]here is no independent tort of negligent infliction of emotional distress . . . the

8    separate cause of action for negligent infliction of emotional distress is stricken from the

9    complaint, as it is part and parcel of the negligence cause of action."). Thus, these claims should

10   be dismissed as a matter of law.

11        Plaintiff's negligence claim is barred by the economic loss rule, which generally allows

12   tort claims only where physical injury to person or property is alleged.[5] *Moore v. Centrelake*

13   *Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022). The rule applies "where the parties are in

14   contractual privity" and the plaintiff's claims are "not independent of the contract." *Id.* (citation

15   omitted). The parties are in privity under the Terms (SAC ¶ 22), and Plaintiff's claims are not

16   independent of the Terms and Privacy Policy, under which he provided the allegedly breached

17   information giving rise to his purported claims. Accordingly, the economic loss rule applies, and

18   because Plaintiff alleges only economic loss, his negligence claim is barred. *See Moore*, 83 Cal.

19   App. 5th at 535 (data breach claims arose from contract where the plaintiffs "provided their

20   [personal information] to [defendant] pursuant to the contracts establishing [their] relationships,

21   and [the] asserted injuries arose from [defendant's] failure to provide data security allegedly

22   promised in their contracts"); *Gardiner I,* 2021 WL 2520103, at *8 (economic loss rule bars

23

24   ---
     [5] Narrow exceptions to the rule exist, but Plaintiff does not allege facts sufficient to meet any of
     those exceptions, nor would any apply here. *See Shahinian v. Kimberly-Clark Corp.*, 2015 WL

25   4264638, at *8 (C.D. Cal. July 10, 2015) ("California's economic loss rule has exceptions that
     fall into two broad categories. The first . . . applies to product liability cases, inapplicable here,

26   and the second . . . applies to breaches of a noncontractual duty . . . where the conduct also (1)
     breaches a duty imposed by some types of 'special' or 'confidential' relationships; (2) breaches a

27   'duty' not to commit certain intentional torts; or (3) was committed 'intending or knowing that
     such a breach will cause severe, unmitigable harm in the form of mental anguish, personal

28   hardship, or substantial consequential damages.'" (citations and quotation marks omitted)).

1  negligence claim based on data breach where plaintiff alleged only economic loss); *In re Sony*

2  *Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 973 (S.D. Cal.

3  2014) ("*Sony II*") (same), *order corrected*, 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).

4      Plaintiff's emotional distress damages allegations do not change this conclusion. "It is

5  only in specialized cases where recovery of emotional distress damages has been allowed for a

6  negligence claim without physical injury . . . ." *Maynard v. United Servs. Auto. Ass'n Fed. Sav.*

7  *Bank*, 2022 WL 1283153, at *1-2 (N.D. Cal. Feb. 11, 2022) (citing *Branch v. Homefed Bank*, 6

8  Cal. App. 4th 793, 800 (1992), and *Quezada v. Hart*, 67 Cal. App. 3d 754, 762 (1977)).

9  Recovery is "limited to economic loss unless malice, breach of a fiduciary duty, physical injury

10  or impact," or an "unusually extreme or outrageous circumstance" is shown. *Maynard*, 2022 WL

11  1283153, at *1-2 (citing *Branch*, 6 Cal. App. 4th at 800). Plaintiff makes no attempt to allege

12  such specialized or extraordinary facts that would allow for emotional distress damages. *See*

13  *Maynard*, 2022 WL 1283153, at *1-2 (economic loss rule barred negligence claim for emotional

14  distress damages for failure to adequately allege "malice, breach of a fiduciary duty, physical

15  injury or impact, or some other unusually extreme or outrageous circumstance"); *Varnado v.*

16  *Midland Funding LLC*, 43 F. Supp. 3d 985, 990–91 (N.D. Cal. 2014) (same). Nor do Plaintiff's

17  allegations that his information is "property" (SAC ¶ 113) overcome the economic loss rule. *See*

18  *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018)

19  ("Although Plaintiffs allege that their Customer Data is 'a form of intangible property,' they do

20  not allege sufficient facts to establish that the theft of their PII damaged them in a non-economic

21  manner.") (economic loss rule barred negligence claim based on failure to secure personal

22  information and to provide adequate notice of data breach). Plaintiff's negligence claim should

23  be dismissed under the economic loss rule.

24      Plaintiff's negligence claim should be dismissed for the additional, independent reason

25  that he fails to plausibly allege any of the required elements. "The elements of a negligence

26  cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause

27  resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013). Plaintiff

28  alleges X Corp. owed him a duty to "safeguard [his] personal information" and breached that

1    duty by "failing to implement and maintain reasonable security measures." SAC ¶ 17. But as

2    noted, X Corp. expressly disclaimed any responsibility "for the . . . security" of its platform from

3    the conduct of third-party bad actors, so X Corp. had no such duty of care. RJN, Ex. D at 2; *id.*,

4    Ex. E at 2; *see also Damner*, 2020 WL 7862706, at *6 ("Plaintiff's allegation that Facebook

5    owed him a duty of care to keep his personal information safe is contradicted by the terms of the

6    [parties' agreement], which expressly disclaim such a duty."). Plaintiff therefore cannot plausibly

7    allege X Corp. owed him a duty of care. In any event, the SAC contains only conclusory

8    allegations that X Corp. failed to implement reasonable security measures or that such failure

9    proximately caused his purported harm. These allegations fail to plausibly allege X Corp. owed

10   him a duty of care, much less breach of that duty and proximate causation.

11          In sum, all Plaintiff's negligence-based claims should be dismissed.

12                     c.      Plaintiff Fails to Allege a Plausible Breach of Contract Claim

13          The elements of breach of contract are "the contract, the plaintiff's performance or

14   excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff."

15   *Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015). In

16   addition to the reasons for dismissal set forth in Sections IV.A.2, IV.A.3, and IV.A.4.a, Plaintiff

17   fails to plausibly allege such a claim.

18          The SAC does not plausibly allege Plaintiff performed his contractual obligations or was

19   excused for nonperformance. Nor does the SAC plausibly allege a breach of the Terms, as

20   Plaintiff does not identify any provision in the Terms that obligates X Corp. to "protect [his]

21   personal information" or "notify Plaintiff of any breach." SAC ¶ 23; *see also Miron v. Herbalife

22   Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (affirming dismissal of breach of contract claims

23   "because the [plaintiffs] failed to allege any provision of the contract which supports their

24   claim"). This is fatal to his claim.

25          Plaintiff also fails to plausibly allege damages, for the reasons stated above, *see* Section

26   IV.A.4.a. Even if he had, Plaintiff seeks only emotional distress damages, which "are generally

27   not recoverable in an action for breach of an ordinary commercial contract in California." *Erlich*

28

1    *v. Menezes*, 21 Cal. 4th 543, 558 (1999).[6] Plaintiff's breach of contract claim should be

2    dismissed.

3                         d.      Plaintiff Fails to Allege a Plausible Breach of Implied Contract

4                                 Claim

5          The elements for breach of contract are "the contract, the plaintiff's performance or

6    excuse for nonperformance, the defendant's breach, and the resulting damages." *Green Valley*,

7    241 Cal. App. 4th at 433. In contrast to an express contract, "the existence and terms of [an

8    implied contract] are manifested by conduct." *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs.,*

9    *Inc.*, 12 Cal. App. 5th 200, 215 (2017) (citing Cal. Civ. Code § 1621). Plaintiff alleges in

10   conclusory fashion that he and X Corp. entered into an implied contract containing "implied

11   promise[s]" that X Corp. would (a) "protect Plaintiff's personal information from unauthorized

12   access and disclosure" and (b) "notify Plaintiff of any breach in a timely and adequate manner."

13   SAC ¶ 30. Plaintiff fails to plausibly allege an implied contract claim.

14          In addition to the reasons for dismissal set forth in Sections IV.A.2, IV.A.3, and

15   IV.A.4.a2, Plaintiff's implied contract claim is barred by the Terms and Privacy Policy, which

16   "constitute[] a valid and enforceable contract" (SAC ¶ 22) and govern X Corp.'s obligations to

17   Plaintiff with respect to Plaintiff's personal information. There, X Corp. expressly disclaimed

18   any obligation to provide security from the acts of third parties (*see* Section IV.B, *supra*), and the

19   Terms do not require X Corp. to provide notice of any data breach. *See T & M Solar & Air*

20   *Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) ("[T]here is no

21   cause of action for implied contract where there exists between the parties a valid express

22   contract covering the same subject matter." (quotation marks omitted)). Plaintiff also does not

23   allege any conduct by X Corp. reflecting its agreement to the purported "implied promises," and

24

25   _____
     [6] Although there are two exceptions—(a) where "the breach also caused bodily harm" and (b)
26   where "the express object of the contract is the mental and emotional well-being of one of the
     contracting parties" (*Erlich*, 21 Cal. 4th at 558-59)—neither exception applies here. The SAC
27   does not plausibly allege that Plaintiff suffered any bodily harm, nor does Plaintiff allege the
     Terms' express purpose was for either party's mental or emotional well-being. *See Green v.*
28   *Mercy Hous., Inc.*, 2018 WL 6704185, at *5 (N.D. Cal. Dec. 20, 2018) (dismissing breach of
     contract claim seeking emotional distress damages where no exception applied).

1  as such he fails to plausibly allege the parties entered into an implied contract. *See Rose v. Cnty.*

2  *of San Benito*, 77 Cal. App. 5th 688, 711 (2022) ("Conduct to form an implied contract, or

3  implied contractual terms, must reflect a mutual agreement and intent to promise where the

4  agreement and promise have not been expressed in words." (internal quotation marks omitted)).

5  Plaintiff's claim for breach of implied contract should be dismissed.

6          e.     Plaintiff Fails to Allege a Plausible Bailment Claim

7          Bailment is the deposit of personal property for a special purpose with an express or

8  implied contract to return the property when the purpose is accomplished. *McGarry v. Delta Air*

9  *Lines, Inc.*, 2019 WL 2558199, at *7 (C.D. Cal. June 18, 2019). In addition to the reasons for

10  dismissal set forth in Sections IV.A.2, IV.A.3, and IV.A.4.a, Plaintiff's bailment claim fails

11  because Plaintiff alleges that unidentified hackers—not X Corp.—stole his information, and he

12  does not allege X Corp. refused to return his data. S*ee Sony I*, 903 F. Supp. 2d at 974 (dismissing

13  with prejudice bailment claim in data breach case because criminals stole customer data and

14  there was no allegation defendant tried to unlawfully retain data). In any event, Plaintiff's

15  information is not physical personal property and therefore is not subject to bailment. *See*

16  *McGarry*, 2019 WL 2558199, at *7 ("Plaintiff's customer data was indeed shared with Delta, but

17  that sharing does not fit the 'bailment' mold that is typically associated with physical property");

18  *Worldwide Media, Inc. v. Twitter, Inc.*, 2018 WL 5304852, at *11 (N.D. Cal. Oct. 24, 2018)

19  (dismissing with prejudice bailment claim in data breach lawsuit where credit card information

20  was stolen). Plaintiff's bailment claim should be dismissed.

21          f.     Plaintiff Fails to Allege a Plausible Claim for Invasion of Privacy

22          In addition to the reasons for dismissal set forth in Sections IV.A.2, IV.A.3, and IV.A.4.a,

23  Plaintiff fails to state a claim for the invasion of privacy by public disclosure of private facts

24  because he fails to plausibly allege any of its elements: "(1) public disclosure, (2) of a private

25  fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is

26  not of legitimate public concern." *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007).

27          Plaintiff's claim should be dismissed as he does not plausibly allege his information was

28  disclosed—by X Corp. or "hackers"—to the public. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7

1   Cal. 4th 1, 27 (1994) (invasion of privacy requires the "disclosure be widely published and not

2   confined to a few persons or limited circumstances."); *Hernandez v. Path, Inc*., 2012 WL

3   5194120, at *6 (N.D. Cal. Oct. 19, 2012) ("Public disclosure means communicating [private

4   facts] to the public at large, or to so many persons that the matter must be regarded as

5   substantially certain to become one of public knowledge." (quotation marks omitted)). Plaintiff

6   also fails to allege any "private fact" was published, let alone any publication so "offensive and

7   objectionable" that it would "constitute an egregious breach of the social norms." *See Hill*, 7 Cal.

8   4th at 37 ("Actionable invasions of privacy must be sufficiently serious in their nature, scope,

9   and actual or potential impact to constitute an egregious breach of the social norms underlying

10  the privacy right."); *Zynga*, 600 F. Supp. 3d at 1049-50 & n.10 (in data breach case "email

11  addresses, phone numbers, Zynga usernames, Zynga passwords" were not "private facts" and

12  their disclosure was not sufficiently offensive to state a privacy claim); *Low v. LinkedIn Corp.*,

13  900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information,

14  including social security numbers, does not constitute an 'egregious breach of the social norms'

15  to establish an invasion of privacy claim."). Plaintiff's invasion of privacy claim should be

16  dismissed.

17              g.       Plaintiff Fails to Allege a Plausible IIED Claim

18          In addition to the reasons for dismissal set forth in Sections IV.A.3 and IV.A.4.a, Plaintiff

19  fails to plausibly allege any element of an IIED claim: "(1) extreme and outrageous conduct . . .

20  with the intention of causing, or reckless disregard of the probability of causing, emotional

21  distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

22  proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson

23  v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (citations omitted). For an IIED claim,

24  conduct is "outrageous" if it is "so extreme as to exceed all bounds of that usually tolerated in a

25  civilized community." *Id.* (citations omitted). Plaintiff does not allege any extreme and

26  outrageous conduct on X Corp.'s part, much less conduct "so extreme as to exceed all bounds of

27  that usually tolerated in a civilized community." *King v. Facebook, Inc.*, 572 F. Supp. 3d 776,

28  785 (N.D. Cal. 2021) (dismissing IIED claim based on Facebook's alleged failure to adhere to its

1   terms of service, where "as a matter of law, Facebook's conduct, as alleged, is not outrageous").

2   Plaintiff also does not allege X Corp. intended to cause emotional distress or reckless disregard,

3   much less that any conduct by X Corp., rather than third-party hackers, is the "actual and

4   proximate" cause of his purported distress. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d

5   1056, 1063 (N.D. Cal. 2016) (dismissing IIED claim because it "require[s] intent on the part of

6   the tortfeasor"), *aff'd*, 700 F. App'x 588 (9th Cir. 2017). As explained in Section IV.A.4.a.,

7   Plaintiff does not plausibly allege he suffered emotional distress damages, much less that any

8   such emotional distress was caused by any conduct on X Corp.'s part. Plaintiff's IIED claim

9   should be dismissed.

10                  h.      Plaintiff Fails to Allege a Plausible CCPA Claim

11          The CCPA provides a private right of action for a "consumer whose nonencrypted and

12  nonredacted personal information . . . or whose email address in combination with a password or

13  security question and answer that would permit access to the account is subject to an

14  unauthorized access and exfiltration, theft, or disclosure" because of a business's failure "to

15  implement and maintain reasonable security procedures and practices." Cal. Civ. Code

16  § 1798.150(a). The statute defines "consumer" to "mean[] a natural person who is a California

17  resident."[7] *Id.* § 1798.140(i). Because Plaintiff represents that he is a "resident of . . . Michigan"

18  (SAC ¶ 2), not California, his CCPA claim should be dismissed. *See Hayden v. Retail Equation,*

19  *Inc.*, 2022 WL 2254461, at *5 (C.D. Cal. May 4, 2022) (dismissing with prejudice "CCPA

20  claims brought by out-of-state Plaintiffs").

21                  i.      Plaintiff Fails to Allege a Plausible CCRA Claim

22          The CCRA requires businesses in California that collect consumer data to give notice of

23  data breaches to consumers in certain circumstances. *See* Cal. Civ. Code § 1798.82(a). In

24  addition to the reasons for dismissal set forth in Sections IV.A.2, IV.A.3, and IV.A.4.a, Plaintiff

25  fails to plausibly allege a claim for violation of the CCRA for two independent reasons.

26

27  [7] "Resident" under the CCPA means an individual who is (1) in California "for other than a
    temporary or transitory purpose" or (2) "domiciled in the State who is outside the State for a
28  temporary or transitory purpose." Cal. Code Regs. tit. 18, § 17014.

1    *First*, the CCRA applies only to breaches affecting "a resident of California." Cal. Civ.

2    Code § 1798.82(a); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL

3    3727318, at *35-36 (N.D. Cal. Aug. 30, 2017) ("[T]he [C]CRA is clear that it applies only to

4    ensure the [PII] of California residents is protected." (cleaned up)) (dismissing with prejudice

5    non-California plaintiffs' claims); *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *9 (C.D.

6    Cal. Aug. 12, 2010) (dismissing CCRA claim because "Plaintiffs were not California residents at

7    the time of any of the events alleged"). As noted, Plaintiff represents that he is a "resident of

8    . . . Michigan" (SAC ¶ 2) and does not allege he ever was a resident of California. Thus, he

9    cannot state a plausible CCRA claim.

10    *Second*, Plaintiff fails to plausibly allege a violation of the CCRA because he does not

11    plausibly allege damages. For such a claim, "a plaintiff must allege actual damages flowing from

12    the unreasonable delay (and not just the intrusion itself) in order to recover actual damages."

13    *Sony II*, 996 F. Supp. 2d at 1010 (dismissing CCRA claim). Plaintiff's CCRA claim fails because

14    his alleged damages flow from the alleged data breaches themselves, and he does not allege any

15    damages from any alleged failure to notify him of a breach. SAC ¶ 12, p.21; *see also Dugas v.*

16    *Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016)

17    (dismissing CCRA claim because plaintiff "does not indicate what, if any, concrete harm

18    resulted from Defendants' alleged failure to promptly notify . . . customers of the data breach");

19    *Sony II*, 996 F. Supp. 2d at 1010 (dismissing CCRA claim where plaintiffs did not allege

20    damages based on delay in notification).

21    Plaintiff's CCRA claim should be dismissed.

22        j.  <u>Plaintiff's Michigan Statutory Claims Fail</u>

23    Plaintiff's claims for violation of the MITPA and the MCPA should be dismissed for

24    several reasons.

25    As set forth in Section IV.A.1, California law governs disputes between the parties, and

26    his statutory claims under Michigan law necessarily fail as a matter of law. *See Trump*, 602 F.

27    Supp. 3d at 1226 (N.D. Cal. 2022) (Twitter's choice-of-law clause enforceable and barred

28    Florida statutory claim); *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp.

3d 1191, 1199 (N.D. Cal. 2014) (dismissing Texas claim where choice-of-law clause mandated California law).

Plaintiff's MITPA claim fails because MITPA imposes notice requirements only where there was a "security breach" (Mich. Comp. Laws § 445.72(1)), which means the "unauthorized access and acquisition of data . . . of personal information maintained by" a business (*id.* § 445.63(b)). "Personal information" is defined as a "first name or first initial and last name linked to" either: (i) social security number, (ii) driver's license or state identification card number, or (iii) "[d]emand deposit or other financial account number, or credit card or debit card number, in combination with any required security code, access code, or password that would permit access to any of the resident's financial accounts." *Id.* § 445.63(r). Plaintiff's conclusory allegations that hackers accessed his "social security number" and "banking information" (SAC ¶ 5) lacks any factual underpinning; indeed, the reports underlying his claims do not allege such "personal information" was involved in any Twitter breach (*see id.*, Exs. A & B; *Legalforce RAPC*, 2019 WL 160335, at *5 (not considering allegations that "are contradicted by the documents attached to, and incorporated by reference in, the FAC")). In any event, he alleges that his social security number and banking information were "expos[ed]" when his "Facebook account"—not his Twitter account—was "compromised." *Id.* ¶ 5.[8] He does not plausibly allege any "personal information" under MITPA was breached, and therefore X Corp. was not required to notify him of the breach.

Plaintiff's MCPA claim fails because Plaintiff fails to meet the heightened pleading standard of Rule 9(b) required for all MCPA claims. *See In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *15 (N.D. Cal. Sept. 22, 2021) ("[A]ll claims under the MCPA are 'construed with reference to the common-law tort of fraud[.]'" (cleaned up) (citing *Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178, 182-83, 186 (1983))); *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 613 (E.D. Mich. 2015) (The "[MCPA] claim does not satisfy

---

[8] To the extent Plaintiff asserts his MITPA claim as a standalone claim separate from his MCPA claim, the MITPA claim should be dismissed because MITPA does not provide a private right of action. *See* Mich. Comp. Laws § 445.72(12), (13), (15); *Lurry v. PharMerica Corp.*, 2024 WL 2965642, at *9 (W.D. Ky. June 12, 2024) (dismissing standalone MITPA claim).

1  Rule 9(b) and therefore fails as a matter of law."). Plaintiff's conclusory allegations that X Corp.

2  committed various misrepresentation and concealment-based practices listed in the statute does

3  not meet Rule 9(b)'s requirements.[9] *See* SAC ¶ 110. For the misrepresentation-based practices,

4  he does not allege any purported misrepresentation, let alone "the who, what, when, where, and

5  how of the misconduct charged," and what is false or misleading about the alleged

6  misrepresentation or omissions as required. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225,

7  1228 (9th Cir. 2019). As for the concealment-based practices, he does not plausibly allege any

8  "silent fraud," which, under Michigan law, requires allegations of concealment in tandem with

9  "some type of representation that was false or misleading." *Hendricks v. DSW Shoe Warehouse,*

10  *Inc.*, 444 F. Supp. 2d 775, 782 (W.D. Mich. 2006) (citation omitted). Although the SAC alleges

11  X Corp. did not disclose the data breaches to him, X Corp.'s alleged silence, without words or

12  conduct meant to mislead Plaintiff that there was no data breach, does not suffice to plausibly

13  allege silent fraud. *See Lucas v. Awaad*, 299 Mich. App. 345, 364 (2013) ("A plaintiff cannot

14  merely prove that the defendant failed to disclose something; instead, a plaintiff must show some

15  type of representation by words or actions that was false or misleading and was intended to

16  deceive." (quotation marks omitted)); *Roehl v. Higbie Maxon, Inc.*, 2002 WL 234875, at *2

17  (Mich. Ct. App. Feb. 15, 2002) ("Mere nondisclosure is insufficient[.]").

18      In sum, Plaintiff's MITPA and MCPA claims should be dismissed.

19              k.    <u>Plaintiff Fails to Allege a Plausible Conversion Claim</u>

20      In addition to the reasons for dismissal set forth in Sections IV.A.2, IV.A.3, and IV.A.4.a,

21  Plaintiff's conversion claim should be dismissed because Plaintiff fails to plausibly allege its

22  elements: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's

23  conversion by a wrongful act or disposition of property rights; and (3) damages." *Anderson v.*

24  *Wells Fargo Bank, N.A.*, 2016 WL 1446768, at *3 (N.D. Cal. Apr. 13, 2016) (dismissing claim).

25  Plaintiff alleges he voluntarily provided his allegedly stolen information to X Corp. (SAC ¶ 29),

26  and Plaintiff expressly consented to providing X Corp. with his information by agreeing to the

27

28  ───────────
[9] The MCPA prohibits 38 trade practices deemed "[u]nfair, unconscionable, or deceptive." Mich. Comp. Laws § 445.903(1).

1   Terms. RJN, Ex. D at 1; *id.*, E at 1. His consent precludes his conversion claim. *Standard*

2   *Furniture Mfg. Co. v. LF Prod. PTE. Ltd.*, 2017 WL 7163925, at *4 (C.D. Cal. Aug. 30, 2017).

3   In any case, "a plaintiff's [PII] does not constitute property" and is not "capable of exclusive

4   possession or control." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal.

5   2012) (dismissing conversion claim with prejudice). Thus, Plaintiff's conversion claim should be

6   dismissed.

7   1.    <u>Plaintiff Fails to Allege a Plausible Unjust Enrichment Claim</u>

8         In addition to the reasons for dismissal set forth in Sections IV.A.2, IV.A.3, and IV.A.4.a,

9   Plaintiff cannot state an unjust enrichment claim. California courts construe "unjust enrichment"

10  as a "quasi-contract claim seeking restitution'" where a benefit was "unjustly conferred . . .

11  through mistake, fraud, coercion, or request." *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at

12  *8 (N.D. Cal. July 28, 2021) ("*Gardiner II*") (quotation marks omitted) (quoting *Astiana v. Hain*

13  *Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), and *Rutherford Holdings, LLC v. Plaza*

14  *Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Plaintiff alleges X Corp. was unjustly enriched by

15  "retaining the benefits" of his information "without compensating" him. SAC ¶¶ 115-16. These

16  allegations fail to plausibly allege an unjust enrichment claim, for at least two reasons.

17        *First*, an unjust enrichment claim fails "[a]s a matter of law" if "a valid express contract

18  covering the same subject matter" exists, unless the contract is unenforceable or void. *Gardiner*

19  *II*, 2021 WL 4992539, at *8. Plaintiff acknowledges X Corp.'s "terms of service and privacy

20  policy . . . constitute[] a valid and enforceable contract," and he does not allege they are

21  unenforceable or void. SAC ¶ 22. Thus, Plaintiff's unjust enrichment claim fails because the

22  Terms, which includes the Privacy Policy, govern X Corp.'s use of Plaintiff's information. *See*

23  RJN, Ex. D at 1; *id.*, Ex. E at 1; *Gardiner II*, 2021 WL 4992539, at *8 (dismissing unjust

24  enrichment claim based on data breach, where data obligations were governed by express

25  contract); *McGarry*, 2019 WL 2558199, at *6 (same).

26        *Second*, Plaintiff's claim fails because he does not plausibly allege X Corp. acquired his

27  information by "mistake, fraud, coercion, or request" within the meaning of the law. *See Russell*

28  *v. Walmart, Inc.*, 2023 WL 4341460, at *2 (N.D. Cal. July 5, 2023) (dismissing unjust

1    enrichment claim for failure to plead benefit was unjustly secured; noting a "request" must be a

2    "direct request" to a particular consumer). Plaintiff's unjust enrichment claim should be

3    dismissed.

4                    m.    Plaintiff's "Future and Ongoing Injury" Claim Should Be
                          Dismissed
5

6          Plaintiff's claim for "FUTURE AND ONGOING INJURY" is not a cognizable cause of

7    action and should be dismissed. *See Sandy v. Bank of Am. Corp.*, 678 F. App'x 579, 579 (9th Cir.

8    2017) (affirming dismissal of "harassment" and "bankruptcy fraud" claims because they "were

9    not cognizable civil causes of action").

10         **B.    Leave to Amend Should Be Denied**

11         While Rule 15(a) states that courts "should freely give leave [to amend] when justice so

12   requires," dismissal without leave to amend is appropriate where, as here, "amendment would

13   [be] futile"—even for pro se plaintiffs. *See Austin v. Tesla, Inc.*, 2022 WL 2315210, at *1 (9th

14   Cir. 2022) (affirming dismissal of pro se complaint without leave to amend "because amendment

15   would have been futile" (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

16   1041 (9th Cir. 2011))); *Snyder v. Allison*, 857 F. App'x 329, 330 (9th Cir. 2021) (same).

17         That is the case here. The disclaimer and limitation of liability clause in the Terms bar his

18   common law claims. His California law claims are time-barred to the extent they are premised on

19   the purported 2016 breach and, except for breach of written contract, the purported 2021 breach.

20   And his statutory claims are barred by the express language and requirements of the CCPA and

21   CCRA and by the choice-of-law clause in the Terms. No amendment can cure these defects.

22         Moreover, Plaintiff has already had numerous chances to try to cure his pleading

23   deficiencies. He filed *two* complaints in the 2023 Lawsuit, which he voluntarily dismissed only

24   after the parties had fully briefed X Corp.'s motion to dismiss and this Court heard oral argument

25   on it. And he has filed *three* complaints in this case. This is his *fifth* opportunity to plausibly

26   allege claims based on the January 2021 data breach (including the two complaints he filed in the

27   2023 Lawsuit); he merits no further opportunity to try to state a claim. *See Bruzzone v. Intel*

28   *Corp.*, 2021 WL 5303916, at *4 (E.D. Cal. Nov. 15, 2021) (denying leave to amend where

1    plaintiff filed similar prior lawsuit against the same defendant because "it plainly appear[ed]

2    plaintiff will be unable to state a valid claim"), *report & recommend. adopted*, 2022 WL 105126

3    (E.D. Cal. Jan. 11, 2022), *aff'd as modified*, 2022 WL 2339912 (9th Cir. June 29, 2022).

4    Plaintiff's allegations his information was disclosed in the alleged 2016 data breach are

5    "belie[d]" by the 2016 Report—which he attached to his original complaint and, curiously, failed

6    to attach to his SAC. Dkt. 4 at 3. Plaintiff's allegations that his personal information was

7    breached in 2016 are "belie[d]" by the 2016 Report, which the Court already found when it

8    dismissed his complaint based on that breach. Dkt. 4 at 3. And although the SAC newly alleges a

9    2023 breach, he fails to allege facts to state a plausible claim, even though this Court and X

10   Corp. have repeatedly explained Plaintiff's pleading deficiencies to him in the 2023 Lawsuit and

11   this action. At bottom, Plaintiff simply cannot state a plausible claim against X Corp. arising out

12   of the data breaches, no matter how many times he tries.

13          Plaintiff also should be denied leave to amend because he is a serial litigant apparently

14   intent on harassing X Corp. with frivolous filings. Plaintiff, whom the United States District

15   Court for the Western District of Michigan has designated as a "frequent pro se litigant," filed at

16   least "fifteen lawsuits" alleging various "defendants [including X Corp.'s predecessor Twitter,

17   Inc.] caused a data breach." *Sifuentes v. Twitter Inc.*, 2023 WL 9015130, at *1 (W.D. Mich. Nov.

18   30, 2023). The Western District of Michigan *sua sponte* dismissed his lawsuits against X Corp.

19   with prejudice. *Sifuentes v. Twitter Inc.*, 2023 WL 7295186, at *2 (W.D. Mich. Nov. 6, 2023);

20   *Sifuentes v. Twitter, Inc.*, 2023 WL 2632781, at *2 (W.D. Mich. Mar. 24, 2023) (separate

21   lawsuit). And that court *sua sponte* imposed filing restrictions on him "to deter future frivolous

22   filings, and to avoid needless litigation burden on defendants and court personnel." *Sifuentes*,

23   2023 WL 9015130, at *4. Granting Plaintiff leave to amend here would similarly impose undue

24   burdens on this Court (and X Corp.), and waste scarce judicial resources on Plaintiff's frivolous

25   filings.

26          Accordingly, leave to amend should be denied.

27   **V.    <u>CONCLUSION</u>**

28          For the foregoing reasons, Plaintiff's SAC should be dismissed without leave to amend.

1

2
Dated:  August 22, 2024

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILLENKEN LLP


By:   _/s/ Kenneth M. Trujillo-Jamison_
      Kenneth M. Trujillo-Jamison
      Attorneys for Defendant X Corp.